### DANIELS *v.* THE STATE.

JENKINS, Presiding Justice. 1. The evidence fully warranted the verdict.
2. The evidence of an eye-witness, corroborated by proof of incriminating statements by the defendant, not being limited to proof of circumstances tending to show the guilt of the accused, the court properly refrained

from giving in charge the Code, § 38-109, relating to the sufficiency of proof by circumstantial evidence alone. *Blocker* v. *State*, 185 *Ga.* 322 (2) (195 S. E. 207).

3. The contention that the court erred in refusing to charge, as requested, the law of voluntary manslaughter, in that the evidence showed a mutual intention to fight by the defendant and a third person, and that in the course of this encounter the deceased, Juanita King, was accidentally stabbed by the defendant, is without merit. The evidence of many disinterested witnesses shows that the deceased was practically disemboweled; that one of her arms was completely severed except for the bone; that she was stabbed in the breast five or six times, was stabbed in the side, in the thigh, and one of the arteries of her leg was severed. The undertaker testified as to cuts even on the bottom of her feet. A neighbor of the deceased testified that she heard the defendant and the deceased in an altercation on the front porch of the deceased, and then saw them struggling, and saw the defendant "sling" her down, and that she heard the deceased begging the defendant to behave himself and not to cut her; that she went over after the defendant left and found Juanita dead; that there had been a car parked in front of Juanita's house, but that the altercation and the attack upon Juanita occurred after the car had been driven off. There was evidence by the arresting officer who brought the defendant back from Detroit, which was corroborated by another witness, that the officer asked the defendant if he knew he had killed the woman, and that he said, "No, sir;" and that when asked why, if he was going to kill her, he cut her up that way, he said, "I don't know, I just went to pieces." When asked where the knife was, he said that he threw it away between the house of the deceased and the schoolhouse. On the trial, the statement of the defendant in its entirety was as follows: "I was down there at Juanita's house that night, and somebody, John Henry, come and knocked on the door, and she opened the door for him, and he said to her, 'you told me a damn lie, didn't you,' and he snatched her out the door, and she called me out there and I went out there. He hit me and I struck at him with my knife, and if I cut her I don't know it, if I did it was not my intention. It was in the dark. I run off and he run off too, and later on I heard them say the sheriff was looking for me for killing Juanita King, and I went on off up the street to·Detroit." It will be observed that the defendant does not claim that John Henry, the third party, cut up the deceased; nor does he claim that there was any extended combat between the third party and himself, but only that "he hit me and I struck at him with my knife," and that "both run off." The defendant by his statement does not in any wise attempt to deny or to explain how he might thus have accidentally mutilated the deceased's arms, breast, bowels, side, thigh, and leg. The fact that she had been thus maltreated was proved by the undertakers and by various other witnesses who saw the deceased at the scene of the crime, and was to some extent implied by the previous statement of the defendant himself, and was in no wise questioned or denied by his statement made on the trial. The sole import of his statement was that, when John Henry "hit" him, he struck at John Henry

with his knife, that both ran, and that, if he cut the deceased, it was accidental. This fails to deny that the deceased was cut up as indicated or that he was the one who did the cutting. It wholly fails to account for or to give any rational explanation of the undenied facts as to the comprehensive mutilation of the deceased. In other words, the statement of the defendant not only fails to explain the facts both uncontradicted and undenied, but in fact distinctly negatives the idea that the deceased could have been accidentally cut in what, from his description, must have been a momentary encounter with a third person. In his statement, he recites nothing with respect to an encounter with a third person which could by any stretch of the imagination explain the undisputed and undenied facts.

Neither the defendant's statement alone, nor the sworn evidence, would have authorized the inference that the deceased was killed in the transaction as to which the defendant stated to the jury that the man "hit me and I struck at him with my knife," and "both ran off."

4. The reasoning in the preceding division of the syllabus applies with equal force to the exceptions taken to the refusal of the court to charge the law of mutual combat, and to the refusal to charge that the defendant could not be convicted of murder unless the jury should find that he would have thus been guilty of murder had the third party been killed.

5. Exception is taken to the charge that, if the jury should find the defendant guilty of the offense of murder, they would have the right, with or without reason, arbitrarily, just as they might see fit, to recommend him to the mercy of the court; the complaint being that the use of the term "arbitrarily," was prejudicial and deprived the defendant of a material right. This ground affords no proper basis for setting aside the verdict and judgment. If it should be assumed that the use of the word "arbitrarily" was inapt, it did not militate against the rights of the defendant, but merely accentuated the unrestrained right and authority of the jury to recommend mercy.

*Judgment affirmed. All the Justices concur, except Head, J., disqualified.*

No. 15225.  September 7, 1945.  Rehearing Denied October 5, 1945.

S. P. *Cain* and R. L. *Cox,* for plaintiff in error.

T. *Grady Head,* attorney-general, M. E. *O'Neal,* solicitor-general, pro tem., and R. A. *McGraw,* assistant attorney-general, contra.